Good morning, Your Honor. Christopher Nelson for the appellant, Richard Mark. Please proceed, counsel. Thank you, Your Honor. I'd like to reserve three minutes for rebuttal, and as Your Honor directed earlier, I will attend to the clock. All right. May it please the Court, this case presents for de novo review the grant of a motion to dismiss a False Claims Act case based on the public disclosure bar. At core, the appellant alleges that Shamir offered and paid remuneration to eye care providers, which was rendered illegal, because instead of providing government insurance plans with invoices reflecting the discounts and the true prices charged, Shamir instead provided the government with false invoices for the costs of the lenses, which were inflated to account for the remuneration, and then unknowingly paid for by the government. Shamir did this because it allowed it to increase the sales of its lenses and its own profits at the expense of the government from whom it concealed its fraud. The district court dismissed this case because it concluded that the public disclosure bar had been triggered, and that the relator was not an original source of his own allegations. Respectfully, these conclusions were erroneous, and the district court should be reversed for two reasons. First, the district court concluded that the public disclosure bar was triggered because Shamir had, through a few niche industry websites, disclosed the existence of its Recreating Perfect Vision plan, and throughout the argument, I may refer to that as RCVP. And through this program, participating eye care providers were eligible to earn redeemable reward points with Shamir. Counsel, before we leave that point, are you saying that because these were, in your words, niche publications, that those were not public disclosures? Yes, Your Honor. That aspect of the analysis falls under the question of what is, quote, news media, as the term was used and defined by Congress within the context of the public disclosure bar within the False Claims Act itself. And our position is, even setting aside the fact that we believe that the court reached the wrong conclusion with respect to whether the public disclosures as a matter of substance constituted sufficient disclosure of the conduct under this court's decision in Metesky to trigger the public disclosure bar, but to Your Honor's question, specifically with respect to news media, it's our position that they're not news media. These websites were small. They were niche. They were not viewed by the general public. Some of them were subscription only. And it's very well established that merely because something exists, and I suppose in this age, merely because something exists on the Internet, it's not necessarily something of which the government should be aware. So what case are you relying upon to support your argument that these websites did not constitute media for purposes of the public disclosure bar? Certainly, Your Honor. That case would be U.S. X-Rail Hate, H-A-I-G-H-T, the Catholic Healthcare West, 445 F. 3rd, 1147. And in particular, if I could direct the court's attention to page 1155. In that case, the court was considering what Congress meant by news media and as it's defined in the False Claims Act. And the court concluded that something is only news media. And if I may quote from that decision, if it is, quote, so public that the government can be presumed to be on notice of it, close quote. And our position is that under the court's interpretation in height, just because something is published online on one of hundreds of millions, if not billions at this point, of blogs or websites or subscription only industry websites does not mean that the government should be or even could be presumed to be on notice of it. And that aspect is even setting aside the fact that these aren't news within the context of news as we believe Congress and the court in height constructed it. They're not providing something that is newsworthy to the public. And I don't mean to suggest that there's a test that says that if something is in the New York Times or something is in the L.A. Times that it's necessarily news or not news. The question of whether something would be, say, in a traditional highly visited website like either of the times goes to its distribution and who may be privy to it. It does not go to the question of whether it is actually news that is included therein. And I say that if I'm belaboring the point, please stop me. The news media within the context of, say, the Times is going to contain not just news stories, but other incidental information and facts which themselves are not news advertisements, little promotional statements, personal ads. If people still do that, I don't know. But there's going to be information even within something that's widely distributed, widely read, and that you could expect the government to be aware of like the Times. That simply don't reach the level of news such that they can be said to have been publicly disclosed within the requirements set forth in height, which is that the government can be presumed to be on notice of them. And then one other aspect since I'm talking about news media that I'd like to raise for the court is if we are to assume that the information in this case that was publicly disclosed is news media, both within the context of appearing in a website that is regularly or widely read enough, and that it was information that was so important that the government would have been on notice of it, the disclosures talk about RCVP. They do not talk about RCVP Plus. And that's a different program. And our core allegation is that RCVP Plus is a different program and that it was a different aspect of fraud in which the defendant... I thought your theory of fraud really was the same as between the two programs. You're saying there's now a difference in the theory of why this was fraudulent? No, Your Honor. Forgive me for being unclear. The difference is that these are two different programs. And my point is that assuming that RCVP was discussed in a public disclosure and assuming that fraud with respect to RCVP was discussed in a public disclosure, which we do not concede, that would have no bearing on the court's analysis of whether fraud had been sufficiently disclosed under the Ninth Circuit's opinion in Metesky v. Raytheon, which held that... You're spending an awful lot of time on this first point, and you only have a few minutes left. I wondered if you wanted to say something about what I took to be your point, which was that fraud was never disclosed. Yes, Judge Rakoff, thank you. The issue here at core for us is that the Ninth Circuit was very clear in Metesky v. Raytheon, and the court held that there had to be an explicit accusation of wrongdoing or facts from which fraud can be inferred. And the court there examined this exact issue and concluded that before the bar can be invoked, the defendant must show that the transaction that was disclosed is one in which a set of misrepresented facts has been submitted to the government. The court in Metesky concluded only that a true state of facts was discernible from the public disclosures of problems underlying the contracts, which were at issue in that case. The court did not conclude that the disclosures revealed that Raytheon had misrepresented anything to the government or that there was any fraud. And that's exactly like the instant case. The disclosures here don't have anything suggesting the presence of a misrepresentation to the government. Instead, all the disclosures describe is a simple customer reward program that's common in the industry and not illegal. This type of reward program that's discussed in the disclosures on which Shamir and the district court relied are expressly exempted from being subject to the anti-kickback and anti-fraud provisions of the False Claims Act at 42 UFC 1320A-7B. And that section states that as long as the discounts are, quote, properly disclosed and appropriately reflected in the costs claimed, close quote, they are permissible and legal. So all that we have that was disclosed to the public is permissible and legal. And all that the government knew until Mr. Mark came forward was that there was an otherwise permissible remunerative program that Shamir had undertaken and that there were eye care providers participating in it. What the government didn't know and what is nowhere set forth in the disclosures that Shamir is pointing to is that Shamir committed fraud when it falsified invoice prices on bills it submitted to the government to gross up the cost of their lenses so that the government would pay for the discounts and not Shamir. And that's the problem here. So the district court's error is not only in concluding that there may have been an accusation of wrongdoing in the public disclosures, but that it was appropriate to assume that the mere existence of a discount program meant that it had to be used fraudulently behind the scenes and unbeknownst to the government. And as much as I would like that to be the standard for an adequate fraud proceeding under 9b, I can't assume that if I were bringing a case simply on the public disclosures themselves. So it seems especially inappropriate to presume that the public disclosure that they made, which was perfectly innocent, would be enough to trip the public disclosure bar in the absence of any suggestion of fraud. I mean, if the rule is going to be that a disclosure that conceals a fraud that no one has any idea about is going to operate to trip the public disclosure bar against the whistleblowers who are supposed to be bringing fraud cases to the government, that creates a very serious problem in the operation of the False Claims Act. Because it means that any defendant who intends to commit fraud can talk about a program generally, not say a word about fraud, and then have a very, very powerful shield against liability. If I may reserve the balance of my time?  Thank you. Response? May it please the court, Kiran Patel for Shamir. Your Honors, in this case, Relator's complaint alleges one theory of a False Claims Act violation. The complaint alleges that the retail eye care professionals, ECPs, received kickbacks through Shamir's promotional program, and that those ECPs then billed the government, Medicare and Medicaid, and falsely attested that they were in compliance with the anti-kickback statute. So let me stop right there and say that that is something very different from what counsel just stated. What counsel just stated was that they were alleging false invoices from Shamir to the government. That is not what is alleged in the complaint. And in fact, in Relator's own brief before this court, Relator stated at page 59, quote, Shamir does not submit claims to vision plans for its lenses. Shamir's customers do. So let's be clear. The alleged false claim here is a bill from a retail ECP, not from Shamir. But counsel, if Shamir manipulated the situation so that the eye care providers, in fact, billed the government for false amounts, what difference does it make whose name was on the invoice if Shamir actually manipulated the situation as alleged? Well, Your Honor, the False Claims Act does include cause to be submitted. But the reason that it matters is because we need to look at what is the alleged false claim here. And the reason we need to look at that is to then compare it to the public disclosures. So that's why I just want to clarify that up front. The allegation is that the ECPs billed the government, not that Shamir billed the government. But that doesn't matter for purposes of the False Claims Act if Shamir caused those false bills to be submitted. If a doctor has a billing service and the doctor sends inflated Medicare invoices through the billing service, the doctor hasn't actually submitted those bills. The billing service submitted those bills, but the doctor is absolutely on the hook for false claims submitted on the doctor's behalf. So I don't understand why you make that distinction. Sure. The reason I make that distinction, Your Honor, is because it's relevant to the public disclosure of our analysis. So we are not here before the court today on the merits of the False Claims Act allegations. The district court did not reach the merits of the False Claims Act allegations. The issue is public disclosure of our analysis. I'm still unclear how the disclosures revealed something that was fraudulent when the disclosures contain no information that the claims were submitted to the government. Your Honor, the disclosures were substantially the same as the allegations that are set forth in the complaint. First of all, the core allegation, again, is the kickback payment that is alleged from Shamir to the ECPs under these promotional programs. So that is the only alleged falsity. And the disclosures did set forth that information. For example, in a 2007 article, Your Honor, in Vision Monday, it was disclosed that Shamir's RCPV Rewards Program will pay the following amounts to ECPs meeting program requirements. Why is that fraudulent, though, on its face? There's nothing fraudulent about that just standing alone, is there? Well, Your Honor, that is one of Relator's arguments that on its face, this is innocuous information and that, therefore, didn't disclose the fraud. Here's why that argument fails, Your Honor. This court's case law has made clear that the public disclosure does not need to, on its face, directly point to wrongdoing. That's the A1 ambulance case. In that case, the court specifically stated that, quote, that the disclosed transactions themselves may not have pointed directly to any wrongdoing is simply of no moment. The court continued. Right, but you've got to be able to infer that fraud is afoot from the facts that are disclosed. And I guess that's – I'm just putting to you the question. I look at those so-called disclosures and there's just nothing – there's nothing – there's no pieces to put together because there's nothing that even hints at that fraud is – it might be lurking beneath what your client was doing. Well, Your Honor, again, the only alleged falsity that Relator sets forth that was presented to the government is an attestation that the ECPs were in compliance with the anti-kickback statute. So, the underlying falsity that Relator is alleging is that, no, there was not compliance with the anti-kickback statute. In fact, these payments were being made. And their disclosures absolutely made that clear. The disclosures set forth the payments. The disclosures you're saying made clear that your clients were not in compliance with the anti-kickback statute? Is that what you're saying? The disclosures made clear that the payments were being made, which Relator contends are kickbacks. Now, the government then had plenty of information to investigate and examine the various elements of an anti-kickback violation, safe harbors, et cetera. But the payments were clearly in the articles themselves. I mean, I guess I could see if the disclosures had also said that these discounts, you know, this discount program applies to, you know, government-funded, you know, lenses that are going to be paid for by the government. And, moreover, we'll be sure to send you an invoice with the inflated amount. I guess I could see if all that had been disclosed, maybe you'd be right. But it doesn't even come close to that. There's not even the first link in the chain of fraud that's disclosed in these so-called disclosures. Well, Your Honor, the disclosures need not explicitly talk about government billing. And that's this Court's decisions under Alcan and Amphistar. So in both of those cases, what was disclosed was the underlying conduct that the Relator contended caused falsity. So in Alcan, it was the underlying union paycheck deductions. Those were disclosed. However, this Court specifically noted in Alcan that the disclosures, quote, did not mention any overcharging, false invoicing, false certification, or any other specific fraud on the government. That was not present in Alcan, and yet the public disclosure bar still applied. Why? Because there was enough, when you knew about the underlying conduct, for the government to be able to examine the situation and make an investigation and determine whether or not there, in turn, had been false claims. Right, and that's why I'm saying that here, for your theory to even have a chance at working, at the very least, the disclosures would have to say that we are not exempting this discount program from government-funded payments, right? Because everyone would otherwise assume that, of course, you fools are not going to just blatantly violate the anti-kickback statute. And, in fact, as I understand it from the plaintiff's brief, that's what you now do. You exempt from these discount programs lenders that are going to be paid for by the government because that's how you have to comply with the law. So that's why I'm saying, in order for your theory to work, at the very least, I think you'd have to have disclosed that, you know, we're not creating any exemptions. And then maybe the government would be on notice to say, oh, well, maybe we better look into this to make sure that they're doing this on the up and up. But you didn't even disclose that fact. Again, Your Honor, the crux of Relator's allegation is the underlying payment. And this court has held on more than one occasion that if underlying conduct that may be fraudulent upon investigation and identification of further facts, if that underlying conduct is out there, that is enough. And it's not just the Alcon case, Your Honor, in addition to Amphistar, just from 2017. There, the prior disclosure was in a non-FCA case. And all it disclosed was that Aventis held an illegal monopoly as a result of a wrongfully obtained patent. The prior disclosures did not talk about billing to the government. However, this court said the only new allegation that Amphistar makes is that the government bought the drug while Aventis held its illegal monopoly. But this is an obvious inference. And that's the same inference that the district court made here. And it's not a stretch at all, Your Honor. What the district court noted is that, number one, it's a well-known fact that Medicare and Medicaid are among the payers that reimburse for eyeglass lenses. And number two, it's also well-known that upon making such claims, ECPs must use CMS Form 1500, which was also out in the public domain. And that form specifically attests compliance of the anti-kickback statute. So both the true state of affairs and misrepresented state of affairs using the X plus Y equals Z Mitesky test were out there in the public domain. The articles themselves need not have specifically talked about government billing and this court's decisions in Amphistar and Alcon say that. And the articles also need not directly have pointed to wrongdoing. The point is that the government had enough information out there to be on notice. The point is not that the government actually knew. And, Your Honor, on that point, Relator has tried to change the standard and present it to this court as if on notice means actual knowledge. The Supreme Court has established that that is not the requirement. In fact, the requirement is simply that the information be out there such that the government could follow up. So in Graham County v. Wilson, the Supreme Court stated, The statutory touchstone, once again, is whether the allegations have been publicly disclosed, not whether they have landed on the desk of a DOJ lawyer. Well, we're not talking about allegations here. We're talking about transactions. And I guess respond to your opponent's argument, which to me has a lot of force, that if we adopted your position here, all that a defendant would need to do to insulate itself from False Claims Act liability would just be to disclose the existence of some program that is perfectly legal in all of its particulars, no red flags whatsoever that are present in the disclosures. But it turns out that unbeknownst to anyone, the defendant was, in fact, orchestrating this program in a totally illegal manner that just blatantly violates the law. You would say, oh, but no, we disclosed the fact that we had this program. Everyone should have just assumed that we might have been doing it in an illegal manner, because that's kind of what you're saying here. Your Honor, the argument that defendants could shield themselves through disclosures is completely wrong. And the reason for that is the government can always pursue a False Claims Act case. The public disclosure bar only gets rid of the violator. All it says is that the violator cannot file a suit and take a share of any potential recovery based on information that was out in the public. And in the same Supreme Court case, Graham, the court addressed specifically that argument. The court said the concern that defendants will insulate themselves from key time liability through disclosures rests not just on speculation, but indeed on rather strange speculation. And the court noted that the government can still always bring the case, even if the relator is dismissed. That's all the public disclosure bar does, is it dismisses the relator's case. Right. That's a pretty helpful from defrauding defendants. That's a pretty helpful thing to have eliminated. The government doesn't have unlimited resources to pursue fraud claims against everybody who's defrauding the government. Respond on the merits, please, to the argument. In your view, your opponent is wrong? That the effect would be to preclude, essentially, any relator from bringing a case? First of all, I think it's a little bit unrealistic to think that companies would go out who are actually committing fraud and publicize their fraud. But they're not. That's the whole point. You haven't publicized any fraud. That's the very point. All you would be disclosing is the existence of some program that on its face could be conducted in a perfectly lawful manner. Right? Just the existence of it. That can be conducted in a perfectly lawful manner. And again, this kind of gets to relator's contention that because not every detail of the fraud, the alleged fraud is in the public disclosure, he should get a pass on the public disclosure bar. That's essentially what relator is contending, is that the public disclosures need to contain every detail, but they don't. That's not the standard. Under Amphistar, under Alcon, and under A1 Ambulance, this court's decisions have repeatedly held that the public disclosures need not point directly to wrongdoing and need not specifically address government billing. If the underlying conduct, again, in Alcon, the union paycheck deductions, and Amphistar, the improperly obtained patent, if the underlying conduct is out there, then the government can go and investigate. The public disclosures... I think the distinction is that here what you disclosed was completely lawful, as opposed to an improperly obtained patent, for example. This is the point that has already been made, but no one reading this, including a government person, assuming RQ1.0, they would read this niche publication, would have any reason to think that there was a fraud going on. Respectfully, Your Honor, I disagree. The anti-kickback statute prohibits remuneration, paying money or other benefits, in this case products, to induce a person to purchase products that may be covered by a federal health care program. Now, there are other elements, there are safe harbors, there's scienter, but those core elements of the underlying purported violation that Shamir did make payments to promote its lenses, that was out there. So there was enough for the government to investigate. And Relator is essentially asking more of the public disclosures than what he is required to do on the actual merits of the case. And essentially he is saying that if the public disclosures do not, on their own, present a False Claims Act case, then the bar does not apply. That's not the standard. The standard is substantially the same. It's not precisely the same or entirely the same. And in Amphistar, this court also said that it does not need to contain every specific detail, just a critical mass of the underlying facts to put the government on notice. I see that my time is up. Your Honors, if I may briefly address news media before we stop. Counsel, you need to sum up. I'll give you a minute to sum up. Your Honors, in Schindler, the Supreme Court said that news media is a very broad category. Numerous circuit courts that we cite have said that it encompasses Internet and industry-specific sources. Those include Third Circuit and Repco websites, the Fourth Circuit and Bouchamp websites, the Eleventh Circuit and Oshroff, also websites and advertisements in the newspaper. We cite nine district court cases that have construed the category in the same way, including Hong, which was affirmed by this court, where a faculty profile on a university website was considered to be news media. Relator contends that the hate case supports his view on news media. That's the one case that he has cited to this court. That case dealt with a FOIA request. And after that case, the United States Supreme Court stated in Schindler that FOIA responses to FOIA requests are public disclosures. So, Relator's standard is not supported by the case law and cannot stand against our several circuit court cases and numerous district court cases, none of which Relator has addressed. So, the news media standard absolutely encompasses the disclosures here, and the disclosures here did put forth the essential elements of the transaction. Thank you, counsel. Rebuttal. Thank you, Your Honor. To be absolutely clear, we're not saying that we want a pass on the public disclosure bar in the face of a fraudulent disclosure. My colleague, Mr. Patel, stated that the disclosures that Shamir made are substantially the same as the disclosures that, I'm sorry, excuse me, as the allegations that Mr. Mark makes in his complaint. And for one, that's simply incorrect. The disclosure cannot be substantially the same, even if there was some way to figure out that behind the scenes there was fraud going on here. We're saying the fraud issue, which was not disclosed, the issue that was not disclosed is that Shamir lied about the prices of its lenses and covered it up by providing false billing information. There's simply no way to tell, just from looking at the disclosures, that the government would have been, to use the words of the court in Metesky, somehow on, quote, on notice to investigate the fraud before a relator filed his complaint. So I think that's a fundamental issue here, that you can't have a disclosure that's substantially the same if everything that the relator alleges was going on to render those public statements false is not within the public domain. With respect to the A1 ambulance case, and forgive me if I overstep on this, I believe Judge Rawlinson was on that case, so if I get it wrong, I apologize. As I recall, in that case, the public disclosure issue constituted filings during an administrative proceeding, not advertisements or promotions from a defendant on a small non-news media website. And in that case, the numbers and information disclosed in the proceeding were themselves sufficient to provide anyone with, you know, a level of analysis or expertise, the ability to figure out the fraud. The relator in that case, I believe I've exceeded my time. Oh, I was just coughing. Go ahead. Oh, sorry. The numbers that were publicly disclosed in A1 ambulance didn't add up. The relator did the math and concluded that something had happened and then filed a false claims act case. That is the quintessential parasitic relator that the public disclosure bar is supposed to stop. The relator in this instance is not parasitic because the public disclosures themselves can't even give rise to notice that there is some potential fraud that might need to be investigated by the government. And without his information, the government never would have learned and opened an investigation which continues to this day. All right. 27 states. All right, counsel. You've exceeded your time on rebuttal. Thank you, Your Honor. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, WATFORD, Rakoff